```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION
```

UNITED STATES OF AMERICA,           :
                                    :
    Plaintiff,                     :
                                    :     CRIMINAL ACTION
v.                                  :
                                    :     NO. 1:11-CR-118-ODE-ECS-1
JUAN JOSE SERRATO VILLA,            :
                                    :
    Defendant.                     :

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

### I.
### Introduction and Summary

This matter is before the Court on Defendant's motion to suppress evidence, [Doc. 12] and motion to suppress statements, [Doc. 13]. The motions came on for evidentiary hearing on May 16, 2011, and are now fully briefed. For the reasons stated herein, the undersigned **RECOMMENDS** that the motions be **DENIED**.

With regard to the motion to suppress statements, the government stipulated at the hearing that it did not intend to offer into evidence any arguably suppressible statements made by Defendant in its case in chief at trial. (T. 3-4)[1]. Accordingly, as was stated at the hearing, the motion to suppress statements, [Doc. 13], should be denied without prejudice on the grounds that it is moot.

---

[1] References to the transcript of the evidentiary hearing held May 16, 2011, [Doc. 22], will be noted as (T. -).

The motion to suppress evidence arises from the circumstances of Defendant's arrest by Rockdale County Sheriff's deputies on the evening of September 15, 2010, at the Lakeview Estates trailer park in Rockdale County, Georgia. At the time of his arrest a .44 caliber bullet was found in Defendant's pocket during a search of his person. A pistol was also found nearby under a trailer.

With regard to the pistol, the government asserts, and the Defendant concedes, that Defendant lacks standing to move to suppress. (T. 4-5). The motion to suppress the pistol should therefore be denied for lack of standing. As for the bullet, the Court finds that the officers had probable cause to arrest Defendant and to search his person incident to his arrest, which validates the seizure of the bullet found in his pocket.

## II.
## Factual Background

The evidentiary hearing developed the following facts material to the motion to suppress: On September 15, 2010, the Rockdale County Sheriff's Office received a 911 call stating that "someone had dr[awn] a gun on somebody else" in the Lakeview Estates trailer park in Rockdale County. (T. 7-10). The caller was a male and stated that he needed police help immediately. (T. 10). Lakeview Estates is known for violent crime and drug activity and is a high

2

crime area. (T. 9, 42). The call signal was 69, which indicates that a person is armed. (T. 10).

At the time the call was dispatched, approximately 7:30 p.m., Deputy Stamatellos and his partner, Deputy Summer Malone, were on patrol within Lakeview Estates. (T. 9). Deputy Stamatellos turned his car around and headed toward 137 Frontier, the location identified in the call. See (T. 11, 20, 61-62). As he and Deputy Malone reached the intersection of Presidential Parkway and Armour Drive, they saw two Hispanic males running away from the direction of Frontier. (Id.). The person giving chase was approximately ten to fifteen feet behind the person being chased. (T. 21). It was daylight at the time and visibility was good. (T. 22-23).

Deputy Stamatellos stopped his patrol vehicle in the road on Presidential Parkway and exited. The person being chased continued running in his direction of travel into the backyard of 1 Armour Drive. (T. 71, 76). The person who had been giving chase stopped and said words to the effect of, "There he is. There he is. He has got a gun. He has got the gun." (T. 11, 13, 24.) Stamatellos told the person, identified later as Miguel Zendejas, to stand off to the side. (T. 11). Deputy Malone stayed with Zendejas. (Id.).

Stamatellos began chasing after the person who was running. (Id.). When he started chasing the running man, Stamatellos was only six to eight feet behind him. (T. 36, 37, 38). Stamatellos

3

told him to stop at least once, but he did not do so. (T. 14, 36). Stamatellos then lost sight of the person momentarily when he disappeared behind the trailer located on 1 Armour Drive. (T. 15, 23-24). Approximately five to six seconds later, the person being chased, later identified as Mr. Serrato Villa, came back around the side of the trailer and, "just throwing his hands up in the air," said to Deputy Stamatellos, "Hey, what did I do? What is going on?" (T. 14, 24, 36).

Unsure if Serrato Villa had a firearm, Deputy Stamatellos drew his service weapon on Mr. Serrato Villa and ordered him to the ground. (T. 15). After several orders from Stamatellos to do so, Mr. Serrato Villa finally got on his knees and then face down on the grass. (Id.). Stamatellos testified that he directed Mr. Serrato Villa multiple times to keep his hands away from his body so that Stamatellos could see them and that approximately two or three times Mr. Serrato Villa continued to try to slide his hands under his waist. (Id.). Eventually Mr. Serrato Villa finally complied and Stamatellos held him there until a backup officer, Deputy Kain, arrived. (T. 15-16, 26).

Deputy Kain arrived a few minutes after Deputy Stamatellos had encountered Mr. Serrato Villa. (T. 16). Kain parked his patrol car next to Stamatellos's. (T. 43). He could see Stamatellos in the yard of 1 Armour Drive from that location. (T. 47). Kain exited

4

his car and ran to where Stamatellos and Serrato Villa were located. (T. 43). He found Stamatellos standing with his gun pointed at Mr. Serrato Villa, who was on the ground. (Id.). Deputy Kain told Stamatellos that he was going to make contact with Serrato Villa. (T. 44, 49). He then approached Serrato Villa from the side as Serrato Villa lay face down on the ground, put his knee in Serrato Villa's back, and handcuffed him behind his back. (T. 34, 44, 50). Kain then searched him. (T. 34). He testified that he emptied Mr. Serrato Villa's pockets for officer safety to make sure he did not have any weapons. (T. 44, 50). From the moment Kain secured him, Defendant was not free to go. (T. 53). Deputy Stamatellos considered Defendant under arrest at this time. (T. 35).

Deputy Kain testified that he first put his hands on Mr. Serrato's stomach to make sure there was nothing tucked into his waistband. (T. 50). Then he emptied Mr. Serrato Villa's pockets. (T. 50-51). He testified that he never patted Mr. Serrato Villa's pockets down at all. (T. 51). He placed all the things he retrieved from Mr. Serrato Villa's pockets on the ground next to him. After emptying Mr. Serrato Villa's pockets Kain patted down Mr. Serrato Villa's legs and made sure there was nothing tucked in a shoe, in his crotch or in the back of his pants. See (T. 44, 50). No gun was found on Mr. Serrato Villa's person or in his pockets. (T. 29).

5

Deputy Kain took from Mr. Serrato Villa's pockets a wallet, miscellaneous keys, a chain and a .44 magnum cartridge, which was found in the right front pocket. (T. 44). Kain testified that he felt a wad of keys as he dug down into Mr. Serrato Villa's pocket and he pulled everything out "to make sure there wasn't anything in there." (T. 51). Kain testified that he also felt the bullet and coins as he felt in that pocket. (T. 52).

After being searched, Mr. Serrato Villa was placed in the back of Deputy Kain's vehicle. (T. 53). Officers then searched the area for a firearm. At some point, a canine was brought in to assist in the search, but the canine did not alert on a firearm. (T. 32). Deputy Malone eventually found a shiny silver revolver underneath a porch on the backside of the trailer. (T. 67). It was behind metal skirting that was nailed to the bottom of the trailer and went all the way around the trailer. (T. 31, 46, 53, 54).

Mr. Serrato Villa remained in a police car after being removed from the ground. (T. 53). Deputy Malone testified that at some point Mr. Serrato Villa was moved from Deputy Kain's vehicle to Deputy Stamatellos's vehicle because it had metal bars which prevented Mr. Serrato Villa from banging his head against the car windows. (T. 85). Mr. Serrato Villa was charged with criminal trespass, reckless conduct and aggravated assault. See Gov't Exh. 2.

## III.
## Discussion

Defendant argues that the search and seizure of the .44 caliber bullet was unreasonable and in violation of the Fourth Amendment, requiring its suppression as evidence at trial. In essence, Defendant argues that Deputy Kain went beyond the scope of what he was permitted to do under Terry v. Ohio, 392 U.S 1, 88 S.Ct. 1868 (1968), when he reached into Defendant's pockets in searching his person for weapons. Defendant argues that Deputy Kain was obligated to do a pat-down of Defendant's pockets and only if the pat-down revealed something that felt like a weapon could he go further and reach inside. See Def's Br. at 13.

In this case, however, the police unquestionably had probable cause to arrest Defendant on a state charge of obstruction of an officer, which gave the officers the authority to conduct a full search of Defendant's person as an incident to a lawful custodial arrest. See United States v. Robinson 414 U.S. 218, 235, 94 S.Ct. 467, 476-77 (1973)[2]; United States v. Lyons, 403 F.3d 1248, 1254-55

---

[2] "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." Id. at 235, 476.

7

(11th Cir. 2008) (probable cause to arrest for disorderly conduct). Here, it is clear that Defendant's flight, along with his failure to halt after having been given a lawful command to stop, was sufficient to establish probable cause for a charge of obstruction of a police officer under O.C.G.A. § 16-10-24(a). See Lewis v. State, 294 Ga. App. 607, 611, 669 S.E.2d 558, 562 (2008) ("This failure to obey the officer's lawful command gave rise to probable cause justifying the officer's subsequent arrest of Lewis for obstruction."); Dukes v. State, 275 Ga. App. 442, 443, 622 S.E.2d 587 (2005); Patterson v. State, 244 Ga. App. 22, 223, 535 S.E.2d 269, 270 (2000); Springles v. State, 227 Ga. App. 112, 113, 488 S.E.2d 492 (1997) ("Flight after a lawful command to halt constitutes obstruction of an officer.").

The fact that the officers may not have formally arrested Defendant until after his pockets were searched and the bullet was found in his pocket does not invalidate the search, where there was pre-existing probable cause for the contemporaneous arrest. Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2264 (1980); United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2002; United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996), cert. denied, 519 U.S. 1083 (1997). Nor does the fact that Defendant was not ultimately charged with obstruction make any difference. "When an officer makes an arrest, which is properly supported by probable

8

AO 72A
(Rev.8/82)

cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." United States v. Saunders, 476 F.2d 5,7 (5th Cir. 1973)[3]; Lee v. Ferraro, 284 F.3d 1188, (11th Cir. 2002); Williams v. Taylor-Lee, 397 F. App'x 608, 610 (11th Cir. 2010); Lorenzo v. City of Tampa, 259 F. App'x 239, 242-43 (11th Cir. 2007); see also Davenport v. Allford, 543 U.S. 146, 153, 125 S.Ct. 588, 593-94 (2004) (subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause). Here, there was pre-existing probable cause for the arrest.

In sum, the officers in this case were possessed of probable cause to support Defendant's arrest for obstruction of a police officer under state law. It matters not whether the officers subjectively believed that probable cause existed for another offense or that they may have announced the wrong offense in making the arrest or that the formal arrest may have followed the search. The officers were permitted to conduct a complete search of

---

[3] In the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

Defendant's person without violating his rights, where his arrest followed quickly on the heels of the search. See Rawlings, 448 U.S. at 111.  The search turned up the bullet.  The bullet need not be suppressed.

## IV.
## Conclusion

For the reasons set forth above, the undersigned **RECOMMENDS** that the motions to suppress evidence and statements, [Docs. 12, 13], be **DENIED**.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.


**SO REPORTED AND RECOMMENDED**, this 20th day of September, 2011.


    s/ *E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)